# NOVEMBER, 1926

## C. D. HARTNETT COMPANY v. J. C. SHIRAH ET AL.

No. 4538.    Decided November 17, 1926.

(287 S. W., 902).

**Chain Stores—Sharers in Branch Store—Corporation or Partnership.**

A Tennessee corporation chartered to own, sell and rent its "Automatic Grocery Sales System," and incidentally to buy and sell goods therefor, obtained from Texas a permit to sell goods therein. By contract with one as manager it established a local branch store at a point in Texas, and issued certificates of ownership therein to persons investing in same. These were to receive monthly proportionate shares of 3 per cent of the gross sales, the manager taking 5 per cent for services of himself and assistants, and the corporation taking 2 per cent and an additional 1 per cent for its services in buying and supervising. *Held:*

(1)    The certificate-holders did not become stockholders in the corporation controlling the patented system; but were partners or joint stockholders, without limited liability, in the enterprise of the local store, and as such liable personally for debts incurred by it in purchase of goods. (Pp. 159, 160).

(2)    The fact that the corporation itself was to receive as royalty a proportion of the gross sales did not prevent personal liability of the shareholders for such debts, whatever might be its effect on the liability of the corporation itself therefor.    (P. 160).

Questions certified from the Court of Civil Appeals for the Eleventh District, in an appeal from Palo Pinto County.

The Supreme Court, having referred the questions to the Commission of Appeals, Section A, for its opinion thereon, adopts same as the answer of the court.

*Preston Martin* and *W. P. Smith*, for appellant.

The uncontradicted evidence shows that the defendants ran their business under the firm name of "Bynn-Yann-Store," having as their manager R. L. Gulley, and as assistant manager J. P. Stevenson, each owning stock in the business, and the last named, Stevenson, being one of the defendants sued in this cause, that they bought their goods and merchandise from appellant in the firm name—Bynn-Yann-Store—and not in the Tennessee corporation name, that appellant did not know them only as a joint stock company, a partnership composed of thirty-odd stockholders; therefore the court erred in holding that they were owners of stock in a corporation, and the corporation only was liable. When two or more persons engage in business under a firm name, and they each own stock in said business, they are liable for all the debts of the firm. Lewis v. Tyler Hotel Co., 257 S. W., 704; Graham Hotel Co. v. Leader, 241 S. W., 700; Robinson v. First Natl. Bank of Marietta, 79 S. W., 103; Freeman v. Huttig Sash & Door Co., 153 S. W., 122; Dee v. Taylor-Hanna-James Co., 227 S. W., 361; Fowler Com. Co. v. Charles Land Co., 248 S. W., 314; Swift & Co. v. Short, 239 S. W., 1118; Rothe v. Jones, 237 S. W., 581; Evans v. Syphrett, 236 S. W., 141; Wichita County Lumber Co. v. Maer, 235 S. W., 990; McDaniel v. Turner, 269 S. W., 496; Bank v. Montgomery, 269 S. W., 849.

*Ritchie & Ranspot,* for appellees.

Where the uncontradicted evidence shows, as in this case, that appellees bought stock in the Bynn-Yann's Company, Inc., which business was run by R. L. Gulley as the agent of said Bynn-Yann's Company, Inc., and appellees did not have the care, control or management of same and were without power or authority to employ or discharge the manager thereof or to contract or pay for goods, wares and merchandise, they are not liable as partners for goods purchased by said Bynn-Yann-Store, and the court did not err in his conclusion of law in finding that the appellees were not liable for any part of the debt contracted by Gulley as manager of said Bynn-Yann-Store. Obenchain v. Nordyke-Marmon Co., 35 S. W., 746.

### STATEMENT OF THE CASE.

MR. JUDGE NICKELS delivered the opinion of the Commission of Appeals, Section A.

Bynn Yann's Company, Inc., is a Tennessee corporation chartered for the "purpose of purchasing the patent rights in the Bynn Yann's Automatic Grocery Sales System, and manufacturing, owning, advertising, displaying, selling and renting said sales system, and buying, disposing, and owning of such goods, wares and merchandise as shall be necessary to carry on a general merchandise business in connection with the purposes aforesaid." It will be noted that such merchandising (i. e., buying and selling of goods) as is included in the corporate object is merely incidental to the other purpose described. Nevertheless, in 1920 (and prior to July 7) it secured from the Secretary of State a permit for "the sale of goods, wares and merchandise" in Texas. This permit, it will be noted, did not purport to allow operation of the "sales system," etc., as a corporate enterprise.

July 7, 1920, the corporation and R. L. Gulley executed a contract in words as follows:

"This contract made and entered into by and between Bynn-Yann's Company, Inc., party of the first part, and R. L. Gulley, party of the second part, witnesseth:

"Party of the first part agrees to employ party of the second part as local trustee, manager, who shall have charge of a Bynn Yann's Grocery Store located as follows: Mineral Wells, Texas, or such other location as may be hereafter elected by Bynn Yann's Company, Inc.

"Party of the first part further agrees that in consideration of one thousand fifty dollars paid by party of the second part it will and does hereby sell to party of the second part Thirty —$35 Certificates of Ownership.

"Party of the first part further agrees to guarantee balance of the necessary funds with which to establish the store contemplated not to exceed a total of $8,000 or refund the amount paid by the party of the second part, which when done shall relieve it of all liability hereafter.

"Party of the first part agrees that party of the second part shall receive as his remuneration 5 per cent of the gross sales of said store, payable each week, and one-half of the dividends declared by said store payable at the close of the quarter for his services and the services of employees under his charge.

"Party of the first part agrees that in event this contract

should be canceled by party of the first part that party of the second part shall be privileged to sell his interest and good will to any person acceptable to party of the first part. Party of the second part further agrees to abide by the terms set forth in a document printed on reverse side of certificates of ownership and governing the management of said store. Party of the second part agrees to devote his entire time to the management of the store established in the territory assigned him, and to accept and abide by any rule, regulation or order made by the Bynn Yann's Company, Inc.

"Party of the first part reserves the right to terminate this contract freed from all liability to party of the second part on giving notice in writing."

Shortly thereafter the corporation issued to "some thirty-odd" persons (residing in Palo Pinto County) "certificates of ownership." Except for variation of date, name of the "owner" and number of "shares," each "certificate" read thus:

| "No. 57 Store | Capital | Shares | $35.00 | Shares |
|---|---|---|---|---|
| $8,000.00 | B. Y. S. | each | | 15 |
| | (Be Wise) | | | |

"Certificate of Ownership in Bynn Yann's Store No. 321, Texas Division.

"This is to certify that Dan Circle is the owner of 15 shares of ownership in Bynn Yann's Store No. 321, located at City of Mineral Wells, State of Texas, and as such owner is entitled to his pro rata of the monthly dividends payable out of the gross receipts of this store under the following terms and conditions:

"A. At the end of every calendar month a sum equal to 3 per cent of the gross sales of Bynn Yann's Store No. 321 during each month shall be divided pro rata according to their holdings between all the owners of 'Certificates of Ownership' of this store.

"B. Bynn Yann's Company, Inc., shall receive as a royalty on the Automatic Gravity Grocery Sales Fixtures, the patent on which is owned exclusively by them, 2 per cent of the gross sale of Bynn Yann's Store No. 321.

"Bynn Yann's Company, Inc., hereby agrees to deposit in trust one-fourth of this royalty for the specific purpose of guaranteeing all shareholders against any financial loss on their original investment from any cause whatever.

"C. The State office of Bynn Yann's Company, Inc., shall receive 1 per cent of the gross receipts of Bynn Yann's Store

No. 321 in return for services rendered in connection with supervision of stores, purchasing for stores and attending to all matters in connection with the operation of the stores. Dallas, Texas, August 21, 1920.

 . (Signed)    "BYNN YANN'S COMPANY, INC.,

     "By Frank L. Medearis, State Manager."

"Bynn Yann's Store No. 321" was thereupon opened at Mineral Wells under Gulley's management. For its operation he bought and received goods from C. D. Hartnett Company, a Texas corporation, during the period intervening September 27, 1920, and March 17, 1924, and as a result a balance was due C. D. Hartnett Company on March 16, 1924.

For recovery on the debt C. D. Hartnett Company sued J. C. Shirah and other individuals, alleging they owed the debt because they "were jointly engaged in the mercantile business" and were "conducting their said business as co-partners under the partnership or firm name of 'Bynn-Yann-Store'," at Mineral Wells, and, as such, they had bought the goods and incurred the debt in question. It was further alleged that "said business as conducted by said defendants was unincorporated, but was a joint stock company" with a capital of "$7,000 and divided into 200 shares at $35.00 each, and each of the defendants were owners of shares of stock in said joint stock company" for which they had paid $35.00 per share. The "shares" thus referred to are the "shares" evidenced by the "certificates of ownership" issued by the corporation as above described.

Among the defenses interposed is one (sustained by the trial court) to the effect that "said shares of stock" were bought from the Tennessee corporation as corporate stock, that the "certificates of ownership" did represent corporate stock, that the defendants were, therefore, corporate stockholders and not personally liable for the debt.

C. D. Hartnett Company perfected its appeal to the Honorable Court of Civil Appeals, Eleventh District, and that court has certified questions as follows:

"1. Did the contract as made and entered into by Bynn Yann's Company, Inc., a corporation incorporated under the laws of Tennessee, with a permit to do business in Texas, with R. L. Gulley, dated July 7, 1920, whereby the business conducted at Mineral Wells, Texas, under the name of Bynn-Yann-Store No. 321, with a capital stock of $8,000, divided into shares of $35.00 each and certificates of ownership were issued and sold to

appellees and others create and make such organization and business a co-partnership or joint stock company?

"2.  Does the fact that the Bynn Yann's Company, Inc., a corporation, received a royalty and percentage on the business done in the Mineral Wells store by appellees and others who had bought certificates of ownership in said business relieve and release appellees from liability to the creditors of said business?"

### OPINION.

The "certificates of ownership" were not certificates of shares of corporate stock for various reasons.  In the first place, they do not have that purport; on the contrary they declare themselves to be evidence merely that their holders own "shares of ownership in Bynn Yann's Store No. 321, located at City (of) Mineral Wells," Texas.  In the second place, they declare the right of the holders (en masse) to receive, at the end of each month, a sum equal to 3 per centum "of the gross sales of Bynn Yann's Store No. 321 during such month" and the right of the corporation, as "royalty," to take 2 per centum "of the gross sales" of that "store" and another 1 per centum for "services rendered in connection with supervision of stores, purchasing for stores and attending to all matters in connection with the operation of the stores."  Every right declared for the "certificate" owner is a right which the law denies to a corporate stockholder and every right reserved for the corporation is one denied it by law.  The whole scheme, if viewed as creating a corporate stockholding relationship, ignores the rights of creditors and defeats the trust fund principle, for the stockholder is to receive dividends whether earned or not and the corporation is to receive profits whether profit or loss be the local "store's" portion.  In saying this, of course, we merely take the words of the paper, for it does not exhibit means whereby the "gross sales" obligations declared are to be paid in event there is no profit.  Again: The record shows $10,000, divided into 100 shares of $100 par value each, to be the total authorized capital stock for the corporation, and that of this 60 shares had already been issued (and were outstanding) when the "certificates of ownership" (par value $35.00 per share, aggregate par value of $7,000) were issued.  These things sufficiently demonstrate that the defendants are not stockholders of the corporation.  One relationship (i. e., corporate) in which individuality is not the entity, and of which our law takes cognizance, is, therefore, eliminated.

There is, and can be, no claim of a limited partnership such

as is permitted by the terms of Chap. 1, Title 105, R. S., 1925, nor did the enterprise belong to any one person.

It results that (as between the defendants and creditors) the concern, at Mineral Wells, is a general partnership or a joint stock association—and whether one name for it would be more appropriate than the other is immaterial, for, on the case made, liability is identical.

We do not wish to be understood as implying that a corporation may lawfully become a partner or member of a joint stock association, or that this corporation, itself, would not be liable to pursuing creditors. No such questions are in the case, and we do not pass upon the legal effect of the corporation's violation of the law further than to say its delinquencies do not clothe its associates with immunity.

We recommend that the first question certified be answered "Yes" and that the second be answered "No."

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.